## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DELLA GORDEN,

        Plaintiff,

v.                                                     Case No:  2:13-cv-369-FtM-38CM

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

        Defendant.

_____

### REPORT AND RECOMMENDATION[2]

    Plaintiff, Della Gorden, is appealing the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  For the reasons set forth herein, the Court recommends that the Commissioner's decision be **REVERSED and REMANDED** pursuant to 42 U.S.C. § 405(g),[3] sentence four.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.   No further action need be taken to continue this suit pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14)** days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

[3] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no

## I.    Issue on Appeal

There is one issue on appeal: whether the Administrative Law Judge ("ALJ") erred in failing to consider whether Plaintiff's impairments meet Listing 12.05C for mental retardation.    Specifically, Plaintiff contends that because a mental assessment performed by Dr. Cheryl Kasprzak, Psy.D., shows that Plaintiff has an intelligence quotient ("I.Q.") score of 70, as well as additional mental and physical impairments, the ALJ should have evaluated whether Plaintiff meets the criteria of Listing 12.05C at step three of the sequential evaluation process.

## II.    Procedural History

On June 30, 2009, Plaintiff applied for disability, DIB, and SSI, alleging that she had been disabled and incapable of working since June 20, 2008 due to back problems.    Tr. 12, 146-55.    The Social Security Administration ("SSA") denied Plaintiff's claim initially on August 27, 2009 (Tr. 116-21), and upon reconsideration on February 5, 2010.    Tr. 126-29.    Challenging the decision, Plaintiff requested and received a video hearing before an ALJ, held on March 15, 2011.    Tr. 75-81.    At the conclusion of the hearing, the ALJ determined that she should be sent for a mental health examination.    Tr. 100.    A supplemental hearing was then held on August 19, 2011, during which a vocational expert ("VE") testified.    Tr. 77-81.    Plaintiff appeared at both hearings, testifying only at the first hearing, and was represented

responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

by an attorney.

On November 10, 2011, the ALJ issued a decision finding Plaintiff not disabled from June 20, 2008, through the date of the decision.   Tr. 12-18.   Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied.   Tr. 1-6.   Accordingly, the ALJ's November 10, 2011 decision is the final decision of the Commissioner.

On May 16, 2013, Plaintiff timely filed her Complaint with this Court under 42 U.S.C. §§ 405(g), 1383(c)(3), arguing that the ALJ's decision is not supported by substantial evidence.   Doc. 1.   Plaintiff argues that the matter should be reversed and remanded to the Commissioner for payment of benefits because the ALJ failed to consider whether Plaintiff meets Listing 12.05C.   The parties have briefed the issue and the matter is ripe for review.

### III.   Summary of the ALJ's Decision

The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.   Tr. 14.   At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 20, 2008, the alleged onset date.   Tr. 14.   At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, myofascial pain syndrome, mood disorder due to chronic pain, borderline intellectual functioning, and possible addiction to narcotic pain medication.   Tr. 14.   At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."[4]   Tr. 16.

Specifically, the ALJ considered Plaintiff's back disorder and concluded that her

condition did not satisfy the severity requirements of section 1.04 of the listings.   Tr.

16; 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

With respect to the Plaintiff's mental impairments, the ALJ found that they

did not meet or medically equal the criteria in sections 12.02 (organic mental

disorders) and 12.04 (affective disorders).   Tr. 16.   20 C.F.R. pt. 404, subpt. P, app.

1, §§ 12.02, 12.04.   In doing so, the ALJ explicitly considered the four broad

functional areas set out in the disability regulations for evaluating mental disorders

and in section 12.00C of the Listing of Impairments (20 C.F.R. pt. 404, subpt. P, app.

1).   Tr. 16.   These four broad functional areas are known as the "paragraph B"

criteria.

In the first functional area – activities of daily living – the ALJ found that

Plaintiff has mild limitations.   Tr. 16.   In the second functional area – social

functioning – the ALJ found that the Plaintiff had moderate limitations.   *Id.*   In the

third functional area – concentration, persistence or pace – the ALJ found that the

Plaintiff had moderate limitations.   *Id.*   In the fourth functional area – episodes of

decompensation – the ALJ found that Plaintiff had experienced no episodes of

decompensation which have been of extended duration, according to the medical

---

[4] Appendix 1 is the Listing of Impairments which "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."   20 C.F.R. § 405.1525(a).

evidence of record.  *Id.*  The ALJ stated that these findings were based on the absence of any treatment for mental impairments and one observation of Dr. Kasprzak, who opined that the Plaintiff could perform simple tasks with moderate limitations of social interaction.  Tr. 16, 474-75.  The ALJ afforded Dr. Kasprzak's assessment great weight.  Tr. 18.

Thus, the ALJ determined that because Plaintiff's medically determinable mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation that have been of extended duration, the paragraph B criteria were not satisfied.  Tr. 16.  *See* 20 C.F.R. § 404.1520(c).  Finding that the paragraph B criteria were not met, the ALJ further stated that he also considered whether the "paragraph C" criteria were satisfied, and found that the evidence failed to establish the presence of the criteria.[5]  Tr. 16.

The ALJ then determined that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b)[6] and 416.967(b), except that she is to avoid more

---

[5] The Commissioner will assess the paragraph C criteria only if the paragraph B criteria are not satisfied.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00.  Although not cited by the ALJ, the Court assumes that the ALJ evaluated the paragraph C criteria for Listings 12.02 and 12.04, the same listings for which the ALJ evaluated the paragraph B criteria. Additional functional criteria in paragraph C criteria are included in Listings 12.02, 12.03, 12.04, and 12.06.  The ALJ made no findings regarding Listing 12.05, which is the issue in this appeal.

[6] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods

than occasional balancing, stooping, kneeling, crouching, crawling or climbing; she is to avoid concentrated exposure to vibrations; and she is restricted to simple, unskilled work with no more than occasional interaction with others.   Tr. 17.

The ALJ did not believe that Plaintiff is functionally limited to the extent she alleged, finding her statements concerning the intensity, persistence and limiting effects of the symptoms not credible to the extent they were inconsistent with the RFC.   Tr. 17.   Specifically, the ALJ stated that the medical records shows that Plaintiff has chronic and sometimes inconsistent pain complaints, with few objective findings, other than MRI.   Tr. 17.   The ALJ noted that no treating source expressed an opinion regarding Plaintiff's functional capacity or on the ultimate issue of disability.   Tr. 18.   The ALJ gave great weight to the mental assessment of Dr. Kasprzak, who examined and tested Plaintiff.   Tr. 18.   At step four, the ALJ determined that Plaintiff was able to return to her past relevant work as a clerk or fast food restaurant worker.   Tr. 18.

## IV.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step

---

of time.

20 C.F.R. § 404.1567(b).

sequential analysis for evaluating a claim of disability.  *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  The district court must consider the entire record, including new evidence submitted to the Appeals Council for the first time, in determining whether the Commissioner's final decision is supported by substantial evidence.  *Ingram v. Astrue*, 496 F.3d 1253, 1265 (11th Cir. 2007).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'").

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3

(11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## V. Relevant Evidence

Because the issues raised in this appeal relate to Plaintiff's mental impairments and her activities of daily living, the following is a summary of the relevant evidence in the record concerning these issues.

### 1. Plaintiff's Testimony

Plaintiff was 41-years old at the time of the ALJ's decision.   Tr. 146, 148.   She testified that she started the 11th grade but did not complete the grade level.   Tr. 86.   She has no problems reading and writing and can add, subtract, multiply and do simple arithmetic.   Tr. 86.   She testified to her inability to work, stating "[i]t's a condition that been going on for years.   It started when I was 16, and it's a ongoing problem that don't seem to never go away.   And no matter how hard I try to deal with it, it get worser and worser."   Tr. 87.   The ALJ questioned Plaintiff, "What's the problem?"   Plaintiff responded, "It's my back.   It's the – just the whole situation. Just dealing with it, period."   Tr. 87.   Plaintiff explained that the pain goes down her back to both legs past her knees and sometimes causes numbness in her toes. Tr. 87.

Plaintiff testified to taking prescribed medications, including ibuprofen, oxycodone, and alprazolam, the latter for stress.   Tr. 89.   Plaintiff explained that she takes medication to help her sleep, stating "[i]t just like sometime when I'm not in the pain, I don't take it, so then I really have problems sleeping dealing with other things."   Tr. 94.   Plaintiff's attempts at physical therapy in 2006 or 2007 "helped a little bit."   Tr. 89.   Plaintiff testified to her ability to walk for lengths of time, stating "[i]t only take about a minute, I'm ready to lay down.   Like I'm ready to lay down now."   Tr. 90.   She explained that she does not shop for groceries, "No.   I basically let my daughters shop for me . . . . If I go in the store, I go in for something quick and out. I don't do too much shopping."   Tr. 90.   The ALJ questioned Plaintiff whether she could stand in line for 15 or 20 minutes if the store is crowded.   Plaintiff stated, "[i]f the store crowded, my patience (INAUDIBLE), I get out of line and go."   Tr. 90. Plaintiff testified that she can sit for a half an hour television program after taking her medication, but would need to lay down after an hour.   Tr. 90-91.   The ALJ questioned Plaintiff, "Can you wash your hair with your hands?"   Plaintiff responded, "I can't tell you the last time I washed my hair."   Tr. 91.

Plaintiff testified regarding her lack of social functioning, "I avoid it a lot because I can't deal with the disgrace of it, you know, going through the pain and there's a lot of emotional stuff just going on right now."   Tr. 92.   Plaintiff's counsel questioned Plaintiff, "Regarding the driving.   You said you avoid it?"   Tr. 95. Plaintiff responded:

> Yes, I try to – the only way I drive if I don't have no other choice.   Like if my sister – she stay like right around·- and if she don't feel like it and

I know I have to be somewhere to appointment, then I'll drive.   But other than, I try to avoid the driving because it just the traffic, being in the traffic, it's like a real agitating me and it'll be – and then I have to sit there.   Like coming here, I almost turned around and went back home.   But I knew I had to be here.   Because the traffic was so bad, it was just frustrating just sitting there.   And I didn't even take anything before I came here this morning.   So now I'm dealing with the pain right now.   Tr. 95.

> 2.   *VE's Testimony*

On August 19, 2011, a supplemental hearing was held.   Tr. 75-81.   William Joseph Weikel, Ph.D., a VE, testified.   Tr. 75-81.   The VE classified Plaintiff's past relevant work as unskilled and semi-skilled and at the light and medium level of exertion.   Tr. 78.   The ALJ then posed the following hypothetical:

I have a 41-year-old female with an 11th grade education and a work history similar to the claimant.   The individual has not any problems reading and writing, can do, can do math, and a work history similar to the claimant, with the following limitations:  The individual can frequently lift 10 pounds, occasionally lift 20 pounds; stand and/or walk about six hours in an eight-hour day, sit about six hours in an eight-hour day; unlimited with regard to pushing and pulling, pushing and pulling of hand and foot controls.    The individual – all postural limitations are occasional: climb, balance, stoop, kneel, crouch, crawl.   The individual needs to avoid concentrated exposure to vibration and hazards such as moving machinery and unprotected heights.    In addition, the individual has a marked limitation, marked being defined as serious limitation, substantial loss in the ability to effectively function, in the area of ability to make judgments on complex work-related decisions. The individual has moderate limitation, moderate being defined, more than a slight limitation in the area, but the individual is still able to function satisfactorily in the area of understanding and remembering complex – understand, remember, and carry out complex instructions; interacting appropriately with the public, supervisors, coworkers; responding appropriately to usual work situations and to changes in a routine work setting.   The individual has a mild limitation, mild being defined as, slight limitation, but the individual can generally function well, in the area of ability to make judgments on simple work-related decisions.    The individual is considered borderline intellectual functioning levels, at borderline; and possibly mild mental retardation.

> Would such an individual be able to perform any of the past, perform
> any of the past relevant work of the claimant?

Tr. 80.   The VE responded, "[t]he office helper, yes; fast food worker, yes; car deliverer, yes; not the dietary aide, but that is for exertional.   That is a medium job." Tr. 80.   Plaintiff's counsel asked the VE to consider if the individual had additional serious symptoms, or a serious impairment in social, occupational or school functioning, whether they would be "unable to keep a job."   Tr. 80.   The VE responded that because Plaintiff counsel's hypothetical included "unable to keep a job," such a limitation would preclude work.   Tr. 80.

### 3.   *Non-Examining Consultants*

Dr. Alan Harris, Ph.D., completed a Psychiatric Review Technique on February 5, 2010.   Tr. 287-300.   Dr. Harris opined that Plaintiff did not have a medically determinable impairment.   Tr. 287.   Dr. Harris stated that Plaintiff's activities of daily living do not show evidence of cognitive impairment.   Tr. 299.   Her irritability when on pain medication did not appear to reach the level of mental impairment and Dr. Harris noted that there was no ongoing treatment for mental issues.   Tr. 299.

### 4.   *Examining Psychologist, Dr. Cheryl Kasprzak*

Plaintiff was referred to Dr. Cheryl Kasprzak, Psy.D., for a psychological evaluation following the first hearing before the ALJ.   Dr. Kasprzak performed the evaluation on April 22, 2011.   Tr. 477-82.   Plaintiff stated to Dr. Kasprzak that the reason she was seeking disability is because of her back.   Tr. 477.   She noted that Plaintiff completed the tenth grade in regular classes, earning C grades.   Tr. 478.

Dr. Kasprzak reported that the extent of Plaintiff's psychiatric and mental health history includes the care of a psychiatrist at Ruth Cooper Center for two months in the early 2000's for treatment of depression.   Tr. 478.   Plaintiff was also under the care of a psychotherapist at JBH Behavioral Health one month prior for an initial assessment for treatment of depression.   Tr. 478.   Plaintiff admitted to death wishes due to back problems, chronic pain and inability to function independently.   Tr. 478.   It was noted that she cries daily, does not socialize, has both good and bad days, has difficulty coping and has depression at an 8 on a 10-point scale.   Tr. 478.

Plaintiff had to quit her longest held employment as a dietary aide due to poor attendance resulting from her back pain.   Tr. 478.   Plaintiff explained that she slept four hours a night over the past 10 years.   Tr. 478.   Plaintiff's daily activities included waking up at noon, showering, and dressing with the assistance of her daughters.   Tr. 479.   Plaintiff is able to cook for and feed herself simple meals, wash dishes by hand, sweep, mop and vacuum floors, change bed linens weekly with assistance, take out trash weekly and grocery shop monthly.   Tr. 479.   She is unable to perform household chores independently due to pain.   Tr. 479.   She watches 10-15 hours of television and reads 4 hours daily.   Tr. 479.

Dr. Kasprzak's mental status examination found Plaintiff to have depressed mood and labile affect.   Tr. 479.   Dr. Kasprzak determined Plaintiff's intellectual ability was in the borderline range.   Tr. 479.   She was able to solve a hypothetical math problem and was able to give an accurate meaning of a proverb.   Tr. 479.   Plaintiff's abstract reasoning ability was within the "far below average range."   Tr.

479.   Plaintiff's remote memory was fair as she identified only 2 of the 5 most recent presidents of the United States.   Tr. 479.   Plaintiff was unable to identify the first president of the United States.   Tr. 479.   Plaintiff's judgment and insight were considered moderate.   Tr. 479.

Dr. Kasprzak administered the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV") (Tr. 479-81) and determined that Plaintiff's Full Scale I.Q. composite score was 70, placing her within the borderline range of intellectual functioning.   Tr. 481.   Plaintiff was functioning within the mild mental retardation range for verbal comprehension, with a verbal score of 68.   Tr. 481.   Plaintiff's processing speed index was 76, placing her within the borderline range of intellectual functioning.   Tr. 481.   Plaintiff's perceptual reasoning index was 73, also placing her within the borderline range of intellectual functioning.   Tr. 481.   Plaintiff was functioning within the below average range of intellectual ability with a working memory index of 83.   Tr. 481.   Dr. Kasprzak determined that the results of the WAIS-IV testing were "considered valid and reliable."   Tr. 482.

Dr. Kasprzak ultimately diagnosed Plaintiff with borderline intellectual functioning with a WAIS-IV full scale IQ of 70.   Tr. 481.   She also diagnosed her with mood disorder secondary to chronic pain due to ruptured discs because she was currently depressed, did not socialize, had death wishes and experienced chronic pain.   Tr. 481-82.

Dr. Kasprzak opined that the results of the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") used to assess personality traits and psychopathology, were

indicative of a "faking bad profile" and considered invalid and unreliable, reflecting severe exaggeration and malingering.   Tr. 481-82.   Based on the MMPI-2 faking bad profile, Dr. Kasprzak further noted that it was difficult to determine where else in the evaluation Plaintiff lacked integrity and exaggerated symptomology.   Tr. 482. Dr. Kasprzak opined that Plaintiff possessed the skills and cognitive capacity to manage finances independently of others.   Tr. 482.   Plaintiff's prognosis for gainful employment was guarded.   Tr. 482.

Dr. Kasprzak also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental).   Tr. 474-76.   She opined that Plaintiff had no limitations with her ability to understand, remember and carry out simple instructions, mild limitations in her ability to make judgments on simple work-related decisions, moderate limitations in her ability to understand and remember complex instructions, moderate limitations in her ability to carry out complex instructions and marked limitations in her ability to make judgments in complex work-related decisions.   Tr. 474.   Dr. Kasprzak stated, "[b]ased on the WAIS-IV FSIQ of 70, she is capable of gainful employment.   However, chronic pain, depression and isolation will interfere with the above items in this domain."   Tr. 474.   Dr. Kasprzak concluded Plaintiff had moderate limitations with her ability to interact appropriately with the public, moderate limitations with her ability to interact appropriately with supervisor(s), moderate limitations with her ability to interact appropriately with co-workers, and moderate limitations with her ability to respond appropriately to usual work situations and to changes in routine work setting.   Tr.

475. Dr. Kasprzak also added, "[i]t is difficult to determine with any degree of certainty the impact her alleged complaints will have on her everyday functioning based on an MMPI-2 faking bad profile."   Tr. 475.

## V.   Analysis

On appeal, Plaintiff argues that the ALJ erred in failing to consider whether Plaintiff meets Listing 12.05C for mental retardation because the evidence showed that Plaintiff had a valid I.Q. score within the range set forth in Listing 12.05C. Defendant responds that although Plaintiff may have an I.Q. of 70, she has failed to show her impairments meet all of the criteria in the diagnostic description of mental retardation, specifically that she had deficits in adaptive functioning prior to the age of 22, and she was able to keep a job and perform activities of daily living.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.   Tr. 16.   In making this determination, the ALJ considered the criteria of Listings 12.02 (organic mental disorders) and 12.04 (affective disorders).   Tr. 16.   The ALJ did not expressly consider whether Plaintiff met or equaled Listing 12.05 for mental retardation.

If Plaintiff contends that an impairment meets a listing, as she does here (Doc. 20 at 19-21), she bears the burden of "present[ing] specific medical findings that meet the various tests listed under the description of the applicable impairment." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).   In doing

so, Plaintiff must have a diagnosed condition that is included in the Listings.  *Id.* Diagnosis of a listed impairment, however, is not enough; as the claimant must also provide objective medical reports documenting that her impairment meets the specific criteria of the applicable listing.  *Id.*; *accord Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).   Further, "[a]n impairment that manifests only some of [the specific] criteria [of the applicable impairment], no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.   Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.   It also contains four sets of criteria (paragraphs A through D).   If you impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.   Listing 12.05 provides, in pertinent part, that a claimant is disabled if he or she meets the following criteria:

> 12.05 Mental retardation: mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, *or* D are satisfied[:]
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (emphasis added).[7]   Accordingly, in order to meet Listing 12.05, "a claimant must at least[:] 1) have significantly subaverage general intellectual functioning; 2) have deficits in adaptive [functioning]; and 3) have manifested deficits in adaptive [functioning] before age 22."   *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Additionally, a claimant must meet one of the four sets of criteria found in 12.05A, B, C, or D, in order to show that his or her impairments are severe enough to meet or equal Listing 12.05.   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).

Relevant here, as noted above, paragraph C of Listing 12.05 is met when the claimant shows: 1) "a valid verbal, performance, or full scale IQ of 60 through 70"; and 2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."   *Id.* at § 12.05(C).   Generally, a claimant meets the criteria for presumptive disability under section 12.05C when the claimant satisfies two prongs: a valid I.Q. score of 60 to 70 inclusive; and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities.   *Lowery*, 979 F.2d at 837.   "It is settled, however, that the presence of a more than slight or minimal limiting impairment satisfies the second criteria of section 12.05(C), even if the impairment is treatable."   *Davis v. Shalala*, 985 F.2d 528, 262 n.3 (11th Cir. 1993).   Listing

---

[7] The Court cites to Listing 12.05 as it appeared when the ALJ entered his opinion on November 10, 2011.   While Listing 12.05 has not substantively changed since the ALJ's decision, the Court notes that currently Listing 12.05 uses "Intellectual disability" in place of "Mental retardation," amended on August 1, 2013.   *See* 78 Fed. Reg. 46,499, 46,501.

12.00(D)(6)(c) mandates that "where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal, performance, and full scale IQs are provided in the Weschler series, we use the *lowest* of these in conjunction with 12.05." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(6)(c) (emphasis added).

In *Hodges v. Barnhart*, the Eleventh Circuit held that "there is a presumption that mental retardation is a condition that remains constant throughout life" and would apply to Plaintiff since the onset date of disability. 276 F.3d 1265, 1266 (11th Cir. 2001). In *Hodges*, the plaintiff acknowledged the lack of I.Q. evidence before the age of 22, but the court agreed with the plaintiff that "I.Q. tests create a rebuttable presumption of a fairly constant I.Q. throughout her life." *Id.* at 1268. The court also noted that "a claimant meets the criteria for presumptive disability under Listing 12.05(c) when the claimant presents a valid I.Q. score of 60 to 70 and evidence of additional mental or physical impairment." *Id.* at 1269. However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Id.* (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in light of the objective testing performed by Dr. Kasprzak. Plaintiff maintains that in light of this testing, her impairments meet the requirements of Listing 12.05C, and therefore the listing should have at least been considered by the ALJ. Dr. Kasprzak's psychiatric evaluation, prepared after the first hearing at the

request of the Commissioner,[8] found that Plaintiff's full scale I.Q. was 70, placing her within the borderline range of intellectual functioning, with a verbal score of 68, placing her in the mild mental retardation range.   Tr. 100, 477-82.   Plaintiff also argues that she meets the additional physical or psychological impairment requirement of 12.05C because Dr. Kasprzak diagnosed Plaintiff with mood disorder secondary to chronic pain due to ruptured discs, that she was currently depressed, did not socialize and had death wishes.   Tr. 481-82.   Plaintiff also asserts that this requirement is met because the ALJ concluded that Plaintiff had the "severe" impairments of degenerative disc disease, myofascial pain syndrome and mood disorder due to chronic pain.   Tr. 14.   Despite this, Plaintiff argues that the ALJ erroneously failed to consider or even discuss Listing 12.05C, in light of Dr. Kasprzak's objective testing.

Although the ALJ did not specially mention Plaintiff's low I.Q. score, he did discuss Dr. Kasprzak's examination.   Tr. 15.   The ALJ also discussed Plaintiff's activities of daily living contained in the report.   Tr. 15.   The ALJ gave Dr. Kasprzak's mental assessment "great weight," and noted that the results of the WAIS-VI were deemed valid.   Tr. 18.   Thus, the Plaintiff arguably has established

---

[8] At the conclusion of the first hearing, the ALJ stated:

> We're back on the record.   I just had a short conversation with the claimant's attorney.   We think it's in the best interest to send her for a mental health examination.   There may be some mental health issues here not been examined by DDS.   She'll be sent to a consultative exam.   She'll be – tell her she'll be there for a while.   She'll get tested and everything. . . . . And send a report and then we'll go from there.   I'll send you a copy and we'll go from there.   Tr. 100.

the presumption of disability established in *Hodges*, but it is not clear that the ALJ further found that the presumption was rebutted by other evidence that showed Plaintiff did not have "deficits in adaptive functioning." *Hodges*, 276 F.3d at 1269. The Government asks the Court to hold that the ALJ implicitly found that Plaintiff's impairments did not meet Listing 12.05C. Doc. 21 at 10. The Court acknowledges that an ALJ *may* implicitly find that a claimant does not meet a listing without committing reversible error. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *Keane v. Comm'r of Soc. Sec.*, 205 F. App'x 748, 750 (11th Cir. 2006). However, under the circumstances of this case, the Court finds that the ALJ's decision demonstrates no such implicit finding. While the ALJ may rely on inconsistencies between Plaintiff's I.Q. scores and her activities of daily living in finding that a claimant does not meet the requirements of the first prong of Listing 12.05C, *Hodges*, 276 F.3d at 1268, it is not clear from the decision that the ALJ considered whether the combined effects of Plaintiff's impairments have more than a minimal effect on her ability to perform basic work activities in order meet the second prong of Listing 12.05C, which he is required to do. *See Davis*, 985 F.2d at 534-35 (ALJ has a duty to consider the effects of a claimant's combination of impairments at step three when determining whether the impairments equal the requirements); *Thomas v. Barnhart*, 2004 WL 3366150, at *3 (11th Cir. Dec. 7, 2004) (remanding case because the ALJ "did not set out in detail how, if at all, Thomas's behavior and daily activities were inconsistent with his IQ score of 69"). Further, the ALJ made no findings regarding

whether Plaintiff suffered from deficits in adaptive functioning and did not discuss her daily activities or behavior.[9]

Defendant further argues that the evidence shows that Plaintiff's impairments do not meet the diagnostic description in the introductory paragraph of Listing 12.05C because the record shows an extensive work history and activities of daily living that do not indicate deficits in adaptive functioning.   Yet in the cases Defendant cites in support of this argument, the ALJ had explicitly considered whether the claimant's I.Q. scores and other impairments met the criteria for Listing 12.05C and found that the record did not support limitations in adaptive functioning. *See Garrett v. Astrue*, 244 F. App'x 937, 938-39 (11th Cir. 2007); *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 984 (11th Cir. 2013).

Thus, the Court finds that remand is appropriate for the ALJ to consider whether Plaintiff meets Listing 12.05C.   The Court will not assume that the ALJ found that Plaintiff did or did not meet the requirements of Listing 12.05C.   *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (the court will not "affirm simply because some rationale might have supported the ALJ's conclusion.").   In similar situations, courts in this circuit have remanded the matter to the Commissioner for further proceedings.   *See Johnson v. Colvin*, Case No. 3:12-cv-17-

---

[9] The SSA's Program Operations Manual System ("POMS") states that the phrase "adaptive functioning" refers to "the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age."   POMS DI 24515.056(D)(2).   *See also Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (explaining that the phrase "adaptive functioning" in Listing 12.05C refers to an individual's ability to cope with the challenges of ordinary life).

J-JRK, 2013 WL 1175258, at *5-6 (M.D. Fla. Mar. 21, 2013) (remanding, in part, because it was not entirely clear whether the ALJ found claimant did not meet Listing 12.05C because of a lack of deficits in adaptive functioning or a lack of additional impairments imposing additional significant work-related functional limitations); *Carroll v. Astrue*, 2009 WL 1708073, at *1-2 (M.D. Ala. June 17, 2009) (remanding, in part, because the ALJ did not explicitly address whether claimant met the requirements of the introductory paragraph of Listing 12.05).

The Government also argues that because Plaintiff did not allege intellectual deficits as a basis for her disability, nor allege to the ALJ that her impairments met Listing 12.05C at the hearing or supplemental hearing, the ALJ was under no obligation to specifically discuss whether Plaintiff's impairments met or equaled Listing 12.05C. The Defendant also asserts that the evidence of record did not indicate that Listing 12.05 was at issue. The Court disagrees. The issue of mental health was raised by the ALJ at the first hearing (Tr. 100), and subsequently a mental health evaluation was prepared wherein Plaintiff's I.Q. scores fell within the range of Listing 12.05C. The ALJ further mentioned in the hypothetical to the VE that Plaintiff suffers from "possible mild mental retardation" and borderline intellectual functioning. Tr. 80. The ALJ should determine whether Plaintiff meets the criteria of Listing 12.05C on remand.

## VI. Conclusion

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that the decision of the Commissioner be

**REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner to determine based upon all the evidence whether or not Plaintiff meets the requirements of disability under 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05C.

      **DONE** and **ENTERED** in Fort Myers, Florida on this 11th day of July, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:

Honorable Sheri Polster Chappell
Counsel of record